## MARY ROCHE *vs.* MARY H. SAWYER.

Suffolk.    January 11, 1900. — May 16, 1900.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Personal Injuries — Negligence — Action against Landlord by Visitor of Tenant — Condition of Way.*

An action cannot be maintained against a landlord for personal injuries occasioned to a visitor of one of the tenants by falling into an opening or cellar way while passing along a walk separating the two rows of tenements, if the walk was in good repair and in the same condition in which it was when the tenant hired his tenement, and the danger arising from the proximity of the opening was not concealed but apparent. The plaintiff being the guest of the tenant and using the walk under his authority had no greater claim to protection than he had.

TORT, for personal injuries sustained by the plaintiff on premises owned by the defendant by falling into an opening or cellar way. At the trial in the Superior Court, before *Gaskill,* J., it appeared that on the premises, which were situated on Second Street, in East Cambridge, were two blocks of wooden houses, each block eighty-three feet long, separated by a way or court called Second Street Court; that this court led from Second

Street to an alleyway in the rear communicating with another public street; that it was twenty feet wide and on approximately the same level as the sidewalk of Second Street; that on the line between the court and the sidewalk of Second Street were two posts, each approximately five feet from the sides of the court, and approximately ten feet apart; that there were three tenements in each block; that each of these had an entrance door on the court; that these doors opened in the second story at a height of four feet four and one half inches from the ground, and were each reached from the court by a flight of steps with a platform at the top; that in the first or westerly tenement on the left or northerly side there was also a basement entrance with an opening three feet wide, five feet six and one half inches long, and two feet one and one half inches deep, and entered by three steps on the inner or easterly side; that on the southerly side of this opening was a wooden sill eight and one half inches wide and three inches above the level of the court; that on each side of the court was a plank walk one foot eight and one half inches wide, leading from the sidewalk of Second Street by the tenements to the back of the court, and intended for the use of the persons passing along the court; that at the point where the northerly plank walk passed the basement entrance to tenement No. 1, there was a space of about three and one half inches between its inner or northerly edge, and the outer or southerly edge of the sill, forming the outer side of the opening; that the top of the walk was at this point three inches from the level of the ground, so that between the sill and the walk there was a space three and one half inches wide and three inches deep; that there were no artificial lights in the court, and the nearest street light was an electric light on the opposite side of Second Street, and one hundred and thirty-five feet south of the southerly side of Second Street Court; that the six tenements in the court were leased by the defendant to different tenants by oral leases, the defendant making all repairs, and retaining control of the court and the outside of the buildings; that the construction of the buildings and the basement entrance of tenement No. 1 had not been changed since the tenements were hired by the persons occupying them at the time when the plaintiff received her injuries, nor had there ever been any lights in the court;

that the plank walk on the left or northerly side of the court and the court itself were in the same condition when the plaintiff received her injuries as when the tenements were hired, and the walk was in good repair and good condition to be walked on, and that the only entrance to the tenements was through Second Street Court.

The plaintiff offered evidence tending to show that on March 10, 1898, she went to Second Street Court to visit Mrs. Grady, the wife of one of the defendant's tenants, who occupied the easterly tenement in the northerly block; that she and Mrs. Grady were intimate friends, and that Mrs. Grady had repeatedly asked the plaintiff to come and visit her at her tenement during all the time she had occupied it; that from September, 1897, to January 8, 1898, Mrs. Grady had visited the plaintiff at the plaintiff's home every week; that she reached the Grady tenement at about 6 P. M., remaining until ten minutes to seven, when she left; that it was very dark; that there were no lights in any of the houses on the court; that in the middle of the court there was a little icy snow; that the plaintiff knew nothing about the construction or condition of the court except that she had followed a plank walk some little distance in going in to Mrs. Grady's; that when she left the tenement she started to walk along the northerly plank walk to reach Second Street, accompanied by Mrs. Grady and her daughter, who were going to see her to her car; that she was using an umbrella, which she carried, as a cane; and that when she reached a point on the plank walk just opposite tenement No. 1 she fell into the cellar opening, there situate, and sustained the injuries complained of.

The court, at the close of the plaintiff's evidence, directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions.

*A. D. Hill*, for the plaintiff.

*P. H. Cooney*, for the defendant.

HAMMOND, J.  The walk was in good repair, and in the same condition in which it was when Grady hired his tenement. If it was dangerous at all to a person in the exercise of due care, the danger arose out of its original construction and not from lack of repair. The danger arising from the proximity of the

basement entrance was not concealed, but was apparent. Nor was the entrance a trap or pitfall. *Hutchinson* v. *Cummings*, 156 Mass. 329, 330. Everything was plainly visible and in the same condition as when hired.

Grady got and had the benefit of the tenement he hired, including its approaches, and had no right to insist on anything better. His rent must be assumed to have been gauged in accordance with the thing he hired and its condition at the time.

The case is plainly distinguishable from the cases where the landlord has been guilty of negligence respecting the repair of a common stairway or other part of a building used in common and remaining under his control, as in *Looney* v. *McLean*, 129 Mass. 33, and *Wilcox* v. *Zane*, 167 Mass. 302; and also from the cases where parts of a building are let to separate tenants for business purposes, and persons call upon the tenants upon business of mutual interest to the caller and the tenant, as in *Marwedel* v. *Cook*, 154 Mass. 235. Neither Grady nor any member of his family, nor any of his house servants, if injured by a similar accident, could have maintained such an action against the defendant for the injury. *Quinn* v. *Perham*, 151 Mass. 162. *Moynihan* v. *Allyn*, 162 Mass. 270, and cases therein cited. *Freeman* v. *Hunnewell*, 163 Mass. 210.

The plaintiff was using the walk as the invited guest of Grady, under his authority and in the exercise of his right, and while she was thus using it the defendant's duty to her was no greater than that which he owed to Grady. See *Coupe* v. *Platt*, 172 Mass. 458; *Plummer* v. *Dill*, 156 Mass. 426.

*Exceptions overruled.*