FORS *v.* LAFRENIERE.

AUTOMOBILES—PEDESTRIANS—INTOXICATING LIQUORS—EQUALLY DIVIDED COURT.

> Judgment, entered on verdict for administrator of estate of pedestrian who had been frequenting places where intoxicating liquor was sold on night in question before receiving fatal injuries when hit by defendants' car at about 2 a. m., on foggy night, is affirmed by an equally divided court.

Appeal from Iron; Stone (John G.), J., presiding. Submitted January 4, 1938. (Docket No. 15, Calendar No. 39,752.) Decided April 4, 1938.

Case by William Fors, administrator of the estate of Victor Fors, against Earl LaFreniere and Amelio

Valenti for damages for death of plaintiff's decedent. Verdict and judgment for plaintiff. Defendants appeal. Affirmed by an equally divided court.

*Ray Derham*, for plaintiff.

*MacAllister & Brown* and *C. D. Dwyer*, for defendants.

BUSHNELL, J. On September 15, 1935, at about 2 o'clock in the morning, plaintiff's decedent, Victor Fors, was struck and killed on U. S. Highway No. 2, near Crystal Falls, by an automobile driven by defendant Earl LaFreniere and owned by defendant Amelio Valenti, who was riding therein. On the night in question Fors had spent some time in Crystal Falls frequenting places where intoxicating liquor was sold. Police officers of the city, with whom he was acquainted, saw him during the evening and stated that, although they believed him to be drunk, they did not think it was necessary to take him into custody. Carl Peterson, one of Fors' friends, secured permission from the officers to take Fors home, Fors living a short distance outside the westerly city limits of Crystal Falls. Peterson testified that he and others put Fors in their car, and drove out on the highway until they reached the vicinity of Fors' home. They drove north two blocks and then west two blocks, where Fors asked them to let him out of the car, and he started walking north towards his home, which was about 2,000 feet distant. "He wasn't staggering when he left the car." This was "between 12 and 1 o'clock." Why Fors went back to the highway is not known; but when next seen he was found lying on the south side of the road about 7 or 8 feet off the pavement, at a

point described as being about 250 or 300 feet east of the westerly city limits of Crystal Falls.

Defendants had left Houghton, which is about 100 miles north of Crystal Falls, around midnight, and had turned east on U. S. Highway 2, a short distance west of the scene of the accident. They had encountered fog in low spots on the road from Houghton and, just before the accident, they ran into a "bank of fog." Defendant LaFreniere said:

"*A.* Well, as I got into this fog bank I noticed a couple of hands and it seemed to come towards the side of the car and I immediately turned to the left."

Valenti, who was seated next to the driver, LaFreniere, said:

"I did not see anything until we saw those hands. His (Fors') head must have went through the windshield because there was a hole three or four inches right through. At the time the collision took place my automobile was on the right-hand side of the road, traveling in an easterly direction. Just as soon as we seen those hands Mr. LaFreniere tried to swing the car away as he applied the brakes, but I could not say how far the car traveled from the time of the application of the brakes and the sight of these hands to where the car stopped. I got out of the car right after the impact and walked over to the body which was lying on the south side of the highway 7 or 8 feet off the pavement. I would say it was about a minute between the time of the impact and the time we stopped the car and walked over to the body."

Both parties claim that when they encountered the "fog bank" they slowed up and that they were driving between 35 and 40 miles an hour at the time of the impact. LaFreniere hailed a passing car and asked the occupants to wait until he could get the

sheriff. When the sheriff arrived at the scene, Fors was dead and an examination disclosed that his skull was fractured, bones in his left leg were broken, and his body was considerably bruised. The sheriff testified that LaFreniere told him that "he didn't see nothing until the party loomed up right in front of him, an object right in front of him. He said he tried to shunt it but he was too late; he couldn't make it."

A headlight of the Valenti car was broken by the impact, the windshield was cracked, the right front fender was damaged, and there were blood stains upon the hood of the car, which was dented a little. The sheriff also found skid marks on the pavement running in an easterly direction from the south side of the road on an angle to the north side and measuring approximately 15 feet.

Action was brought by Fors' administrator under both the survival act (3 Comp. Laws 1929, §§ 14040–14060 [Stat. Ann. §§ 27.684–27.704]), and the death statute (§§ 14061, 14062 [Stat. Ann. §§ 27.711, 27.712]). At the conclusion of plaintiff's testimony defendants asked the court for a directed verdict as to count one of the declaration because plaintiff failed to show that Fors survived the accident, and as to both counts of the declaration because of a lack of proof of any negligence on the part of defendants, and because the testimony introduced up to that point showed that plaintiff's decedent was guilty of contributory negligence as a matter of law. This motion was denied. At the close of all the proofs the defendants' request for a directed verdict was renewed on the same grounds. Decision was reserved and the case was submitted to the jury, who found in favor of plaintiff in the sum of $3,600. Motions to set aside this verdict and to grant a new trial were subsequently denied.

Appellants propose five questions on appeal as follows:

1.   Defendants claim that there was no showing of actionable negligence.  We cannot agree with this contention.  Defendants claim they were exercising due care under the circumstances, while plaintiff says that defendants should have operated their car at such a speed that they could have seen Fors in time to avoid the accident.  It cannot be said, as a matter of law, that there was an absence of evidence of actionable negligence.  See *Russell* v. *Szczawinski,* 268 Mich. 112, and authorities cited therein, especially *Lett* v. *Summerfield & Hecht,* 239 Mich. 699, and *Elrich* v. *Schwaderer,* 251 Mich. 33.

Whether defendants had their car under such control under the circumstances related so as to enable them to stop within the range of their assured clear vision ahead was, in this instance, a question of fact to be determined by the jury.

2.   Defendants claim the court erred in refusing to charge the jury as follows:

"I charge you that it is the defendants' contention that the driver of the car, the defendant LaFreniere did not see, could not have seen with reasonable care, plaintiff's decedent, until immediately at the time of the impact, when he appeared at the right of the car with his hands up and if you find that plaintiff's decedent either walked into or stumbled against the car as it was passing, plaintiff's decedent was guilty of contributory negligence, as a matter of law, and cannot recover, even though you might find the defendants or either of them were guilty of negligence in the operation of the car at the time and place in question."

In support of this contention defendants argue that they were entitled to have their theory of the case explained to the jury, it being that plaintiff's

decedent came from the side of the road into the path of the car or into the side of the car. The only evidence to support such a theory was defendant LaFreniere's statement that he "noticed a couple of hands and it seemed to come towards the side of the car," and a similar statement by Valenti.

Defendants' theory is refuted by the physical facts recited above, which show that plaintiff's decedent was struck by the front of the car. See *Filter* v. *Mohr*, 275 Mich. 230. Nor can it be said, as a matter of law, that one who walks or stumbles into the side of a car is necessarily guilty of contributory negligence. It is negligence only if it happened because of failure to exercise due care. See *Patterson* v. *Wagner*, 204 Mich. 593. This necessary qualification was not included in the language proposed by defendants. The court, therefore, properly refused to charge in the exact language of defendants' request.

3. Defendants ask:

"Did the plaintiff, at the completion of his proofs, establish by a fair preponderance of the evidence that plaintiff's decedent was in the exercise of due care and free from contributory negligence?"

It is not necessary to determine the question discussed by the parties hereto as to whether a presumption of due care on the part of plaintiff's decedent could be invoked under the circumstances of this case, since we are of the opinion that the evidence presented by plaintiff was sufficient to take the question of his decedent's due care to the jury. There was evidence as to skid marks, the damage to defendant Valenti's car, the rate of speed at which defendant LaFreniere was driving, the nature and character of the accident, and the atmospheric conditions surrounding it. *Patterson* v. *Wagner, supra;*

*Petersen* v. *Lundin,* 236 Mich. 590, 593; *Foote* v. *Huelster,* 272 Mich. 194; *Filter* v. *Mohr, supra.*

4. Appellants claim that decedent was guilty of contributory negligence as a matter of law. They base this claim upon the theory that Fors, while in an intoxicated condition, either walked or stumbled into the side of the car.

As heretofore indicated, the physical facts show that Fors was struck by the front of the car. Moreover, the degree of intoxication, Fors' ability to observe on-coming traffic, and the possibility that the effect of the liquor had worn off by the time of the impact, were all questions of fact to be determined by the jury. See *Peters* v. *Railway Co.,* 178 Mich. 481.

5. It is contended that plaintiff did not prove by a "fair preponderance" of the evidence that the decedent had any dependents who were entitled to damages under the death act and that, in any event, the amount awarded was excessive.

Fors, an unmarried man, age 33, was living with his mother, Sophie Rosenlind, near Crystal Falls. He was at the time working as a common laborer and contributed to his mother's support. It is apparently conceded that she alone, if anyone, suffered pecuniary loss through Fors' death. Testimony was received as to his earnings and his mother's expectancies.

The amount of Fors' contributions varied as he obtained gainful employment; on several occasions they amounted to $30 a month. The family kept a cow and had a garden plot. The mother testified that, in addition to giving her money from time to time, Victor did all the work around the place just as her deceased husband had done. Fors also cut hay and wood for others.

It is argued that, because the mother provided her deceased son with board and lodging worth, according to one witness, about $1 per day, there is no proof of any financial loss to Mrs. Rosenlind because of her son's death.

In *Crook* v. *Eckhardt,* 281 Mich. 703, 713, we quoted some pertinent observations of Mr. Justice FELLOWS in *Pratt* v. *Detroit Taxicab & Transfer Co.,* 225 Mich. 147. The law as stated in *Black* v. *Railroad Co.,* 146 Mich. 568, although there applied to the difficulty in computing the prospective earnings of a minor, is also pertinent to the question of earnings of an adult under the employment conditions in 1935 and prior depression years. To paraphrase the language of the *Black Case,* the average jurors know the conditions that surround a man like Fors in their community. From such knowledge the jury may draw inferences as to decedent's probable earnings during his or his dependent's expectancy of life, whichever is shorter.

Cold mathematical reasoning must yield to the general knowledge and experience of the trier of the facts in such situations. The elements which must be considered in determining the value of a decedent's life are of necessity personal to each case and no exact or uniform rule can be laid down for such determination. *Michigan Central R. Co.* v. *Vreeland,* 227 U. S. 59 (33 Sup. Ct. 192, Ann. Cas. 1914 C, 176). Nor can a jury arrive at the measure of damages by precise mathematical calculation, but all of the facts and circumstances must be considered. *Illinois Central R. Co.* v. *Spence,* 93 Tenn. 173 (23 S. W. 211, 42 Am. St. Rep. 907).

We think it cannot be said, as a matter of law, that there was no basis upon which to find a verdict for pecuniary loss. We should not substitute our

judgment for that of the jury in the absence of a showing that its verdict was secured by improper means, prejudice or sympathy, or that the amount is such as to shock the judicial conscience. *Watrous* v. *Conor,* 266 Mich. 397, and *Crook* v. *Eckhardt, supra.*

The judgment entered upon the verdict is affirmed, with costs to appellee.

CHANDLER and MCALLISTER, JJ., concurred with BUSHNELL, J. NORTH, J., concurred in the result.

SHARPE, J. I am not in accord with Mr. Justice BUSHNELL's opinion.

He says:

"The evidence presented by plaintiff was sufficient to take the question of his decedent's due care to the jury. There was evidence as to skid marks, the damage to defendant Valenti's car, the rate of speed at which defendant LaFreniere was driving, the nature and character of the accident, and the atmospheric conditions surrounding it."

The above quoted portion of the opinion has a direct bearing upon the negligence of defendant but, if plaintiff is to recover, it must be shown that plaintiff's decedent was free from contributory negligence. This is so because of the fact that there was at least one eyewitness to the accident. See *Foote* v. *Huelster,* 272 Mich. 194; *Collar* v. *Maycroft,* 274 Mich. 376; and *Faustman* v. *Hewitt,* 274 Mich. 458.

At the close of plaintiff's testimony, defendant moved for a directed verdict. At this point the only testimony offered by plaintiff on the question of liability was statements made by the defendant LaFreniere and the witness, Waite. The substance of this testimony was that defendant's car was being driven at a speed of 30 to 35 miles per hour, the

night was foggy, and that LaFreniere did not see plaintiff's decedent until he (plaintiff's decedent) hit the windshield.

In *Neeb* v. *Jacobson,* 245 Mich. 678, we said:

"Plaintiff was not struck by the front of the car, but apparently by its side. If plaintiff failed to look to see if cars were coming, she was guilty of contributory negligence. If she looked and failed to see what was in plain sight, she was guilty of contributory negligence. If she went across the street heedlessly, without knowing where she was, and ran into defendant's automobile, she was guilty of contributory negligence. If she did not listen or did not hear defendant's automobile by reason of carelessness and inattention, she was guilty of contributory negligence."

Whether plaintiff's decedent stumbled into the car from the side of the highway or, while walking thereon, paid no attention to the oncoming car, is not clearly shown by the record, but in either event there was a failure to use ordinary care, and such failure precludes recovery.

The judgment of the trial court should be reversed without a new trial. Defendants may recover costs.

WIEST, C. J., and POTTER, J., concurred with SHARPE, J. BUTZEL, J., concurred in the result.